1             IN THE UNITED STATES DISTRICT COURT
              MIDDLE DISTRICT OF TENNESSEE
2                NASHVILLE DIVISION

3     UNITED STATES OF AMERICA     )
                       )
4                       )
         v.             ) Case No.
5                     ) 3:19-cr-00256
     FRANKLIN PINEDA-CACERAS      )
6                       ) CHIEF JUDGE CRENSHAW
                       )
7 - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

8               BEFORE THE HONORABLE

9     CHIEF DISTRICT JUDGE WAVERLY D. CRENSHAW, JR.

10            TRANSCRIPT OF PROCEEDINGS
               (Via telephone)
11
               April 10, 2020
12 - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

13

14 APPEARANCES:

15

16        For the Plaintiff:  Ms. Meggan B. Sullivan
                       3510 Woodmont Boulevard
17                       Nashville, Tennessee 37215

18        For the Defendant:  Mr. Ahmed A. Safeeullah
                       110 Ninth Aveune, S., Suite A961
19                       Nashville, Tennessee 37203

20

21

22

23 PREPARED BY:
             LISE S. MATTHEWS, RMR, CRR, CRC
24             Official Court Reporter
             801 Broadway, Room A839
25             Nashville, TN 37203
           lise_matthews@tnmd.uscourts.gov

1    The above-styled cause came on to be heard (via

2  telephone) on April 10, 2020, before the Honorable Waverly D.

3  Crenshaw, Jr., Chief District Judge, when the following

4  proceedings were had, to-wit:

5

6    THE COURT:  All right.  We're here on 19-22- --

7  2256.

8    MS. PARISE:  -256.

9    THE COURT:  -256.

10    United States of America versus Franklin

11  Pineda-Caceras.

12    Who is on the line?

13    MR. SAFEEULLAH:  It's Ahmed Safeeullah for the

14  United States.

15    THE COURT:  All right.

16    MS. SULLIVAN:  And Meggan Sullivan for

17  Mr. Pineda-Caceras.

18    THE COURT:  I trust that both of you are safely at

19  home?

20    MR. SAFEEULLAH:  Yes, we are.  I am.

21    MS. SULLIVAN:  Yes, sir.

22    THE COURT:  Good.  So I know Mr. Caceras is not

23  here.  And that's okay because this is a first setting.  And

24  we're just going to reset this.  However, I will ask

25  Ms. Sullivan -- and I have a court reporter here.  I'm sorry.

1  I meant to tell you that. Let's provide Mr. Caceras a copy

2  of the transcript so he knows what we discussed in his case.

3          Also, a couple of ground rules that I need to say.

4  Remind you all that there's no recording, broadcasting or any

5  kind of use of the proceeding. And you need to state your

6  name before you start talking because really everybody pretty

7  much sounds the same, and the court reporter has a difficult

8  time, and I have a difficult time, figuring out who's

9  speaking.

10          And I will -- I do want to confirm on the record

11  there's no one else listening to this other than the two

12  attorneys?

13          Is that correct from the government?

14          MR. SAFEEULLAH: That's correct, Your Honor.

15          THE COURT: Okay. Ms. Sullivan?

16          MS. SULLIVAN: That's correct, Your Honor.

17          THE COURT: All right. So, Ms. Sullivan, we've

18  got this set for trial on April the 28th. And obviously with

19  the state of world and the state of the Middle District, I

20  can't get jurors in here. So pursuant to the Administrative

21  Order 209, all trials have been continued.

22          However, I'm still -- I'm -- still want to set

23  this for a firm trial date. I notice that there are some

24  serious charges here with Mr. Caceras. And one of them has a

25  mandatory minimum.

```
 1              So first of all, have you talked to him about --
 2    Ms. Sullivan, about what a mandatory minimum is?
 3              MS. SULLIVAN:  Your Honor, I have.
 4              THE COURT:  Okay.  In Count Six.
 5              And where is Mr. Caceras located?
 6              MS. SULLIVAN:  He is at the Davidson County
 7    facility on Harding Pike or Harding -- yeah, Harding Pike.
 8              THE COURT:  Yeah.  Harding Place.
 9              Okay.  Are you -- this is for both attorneys.
10              Are you both aware of the report of the marshal
11    that comes out on a daily basis?
12              MR. SAFEEULLAH:  This is Ahmed Safeeullah for the
13    government.  Yes, I am getting the daily report from the
14    marshals.
15              THE COURT:  Good.  And how about you,
16    Ms. Sullivan?
17              MS. SULLIVAN:  Yes, Your Honor, I am.
18              THE COURT:  Okay.  Excellent.  Are you getting it
19    from Henry Martin?
20              MS. SULLIVAN:  Yes, sir.
21              THE COURT:  Okay.  So I want to make sure you both
22    had that, and particularly you, Ms. Sullivan, so you can see
23    the changing nature -- this changes every day.  A few days
24    ago they were permitting contact visits.  Now they're not.
25    For Davidson County -- for Davidson County, they are
```

1   diligently working on video communications between lawyers

2   and clients and perhaps with the Court.  So during -- during

3   this interim period, all the judges, including me, expect

4   both of the parties to be working diligently on their cases

5   as we figure out what the new normal is.

6          So that said, Ms. Sullivan, have you -- you

7   told -- you obviously talked to Mr. Caceras that we were

8   having this status conference, right?

9          MS. SULLIVAN:  Yes, sir.

10         THE COURT:  All right.

11         So we've got this April trial date, which we can't

12  proceed on.  How about we reschedule this for January the

13  26th, 2021?

14         How does that fit for the government?

15         MR. SAFEEULLAH:  For the government that works,

16  Your Honor.

17         THE COURT:  Ms. Sullivan?

18         MS. SULLIVAN:  That works, Your Honor.

19         THE COURT:  Okay.  So we'll do the trial on

20  January the 26th, 2021.  The pretrial conference will be

21  January the 15th at 10:00.  We'll do another status

22  conference on December the 18th, 2020 at 11:00.  But given

23  the delay here, how about you all give me a written status

24  report on where we are in the case by -- how about August the

25  3rd?

1          MR. SAFEEULLAH:  That works for the United States,
2     Your Honor.

3          MS. SULLIVAN:  Your Honor, that works.  You just
4     want a joint written statement?

5          THE COURT:  Yes.

6          MS. SULLIVAN:  Filed by one of us?

7          THE COURT:  By both of you.

8          MS. SULLIVAN:  Okay.

9          THE COURT:  You can file it together.  And
10    obviously I want to know what is the status of discovery,
11    which we're going to talk about here in a minute.  I want to
12    know about any anticipated motions, which we're going to talk
13    about here in a minute.  And I also want to know that you and
14    the government are talking about other ways to resolve the
15    case.  So we'll add that to the order.

16         Pretrial motions will be due on December 1st,
17    2020; responses December 15th, 2020; replies on December
18    22nd, 2020.

19         And Ms. Sullivan, I'm going to need a waiver from
20    Mr. Caceras for 273 days.  Other defense attorneys have been
21    able to mail or deliver waiver forms and have their clients
22    send it back or meet with their clients, when allowed, and
23    send it back.  And typically they've been able to do that in
24    about, you know, a week or ten days.  So how much time do you
25    want to get me a waiver for 273 days?

1          MS. SULLIVAN:  Your Honor, I would need ten days.
2     I'm going to have to have the waiver translated first.  So --
3     and in that vein, I'm going to be submitting a motion either
4     today or tomorrow morning asking for funding for Mira Gann to
5     assist me on translating.  She's already translated the
6     indictment for him and a couple other things, which I'm a
7     little behind on getting the funding so she can get paid, but
8     I think Ann already paid her.  So I'll be filing that today.
9     So ten days would be good to give her a few days to translate
10    it.  And then I will drop it off in person instead of mailing
11    it.  And then that will give him a few days to get it back --
12    mail it back to me.
13          THE COURT:  Okay.  Why don't we just go ahead --
14    today's the 10th.  Why don't we say April the 22nd.  That
15    gives you a couple more extra days.  Does that work?
16          MS. SULLIVAN:  That's perfect.  Thank you.
17          THE COURT:  Okay.
18          All right.
19          MS. SULLIVAN:  And Your Honor, when I file, I'll
20    file the translated version of the waiver with his signature,
21    or would you like me to file the -- just file them as a
22    composite exhibit, I guess.  The English with the Spanish?
23          THE COURT:  Yes.  Yes.
24          MS. SULLIVAN:  With his signature on the Spanish?
25          THE COURT:  Yes.

1          MS. SULLIVAN: Okay.

2          THE COURT: All right. I was just -- hold on a

3 second.

4          Now, I'm told here that -- well, you have the

5 report. Through the glass capabilities are available at

6 Davidson County.

7          MS. SULLIVAN: Okay.

8          THE COURT: And there is a robust telephone system

9 in place that attorneys can use to have unrecorded

10 conversations. Although the attorney has to register with

11 the system. Okay.

12          MS. SULLIVAN: I believe I'm already registered

13 with that facility. And if I'm not, my secretary is working

14 on getting me registered with every facility and making sure

15 I am. But I think I already am with that one.

16          THE COURT: Okay.

17          MS. SULLIVAN: And the problem is, is he has been

18 on quarantine because his case manager has been infected. So

19 the next two weeks may be kind of iffy if I can have, even,

20 any through-the-glass contact with him because they're not

21 letting him out of the D pod. So I'll just do the best I can

22 and keep the Court updated, but I don't think it will be --

23 he is getting mail because he's gotten my update letters. So

24 we'll get it done one way or another before the 22nd.

25          THE COURT: Do you know when he went into

1 quarantine?

2       MS. SULLIVAN:  I don't know that.  No.

3       THE COURT:  All right.  The information I have is

4  if he's in quarantine he's going to be in quarantine for 14

5  days.  Yeah --

6       MS. SULLIVAN:  I know at the very least it's three

7  days old because that's when I started calling about the

8  status hearing.  But outside of that, I'm not sure.

9       THE COURT:  All right.  I'm going on to extend the

10 time for you to give me that written waiver to April the

11 24th.  And that assumes -- that should be enough to get him

12 through quarantine -- out of quarantine and you to get with

13 him and get the waiver and bring him up -- and give him a

14 copy of this transcript.

15      MS. SULLIVAN:  Okay.

16      THE COURT:  All right.  Tell me about discovery.

17 What discovery has been provided to Mr. Caceras from the

18 government?

19      MR. SAFEEULLAH:  From the government, this is

20 Ahmed Safeeullah speaking.  We turned over -- we initially

21 had it on a disc.  But it was too large to put on a disc.  So

22 we were trying to meet up to exchange a hard drive, to put it

23 on a hard drive.  And finally we just settled on sending it

24 electronically through a system USA.next, where we can

25 disclose large amounts of discovery, but the discovery in

this case -- it really isn't voluminous. It's his cell phone
and then lab reports for drugs that were found, and also the
report on the firearm that was recovered. So outside of
those reports, there aren't any written statements or oral
statements made by the defendant. It's not a very extensive
discovery case. It's just mainly his cell phone and then the
report from the experts.

THE COURT: Was there a search warrant on the cell
phone or anything else?

MR. SAFEEULLAH: Yes, there were, Your Honor. And
those are still under seal. I'll likely file a motion in the
near future for them to be unsealed for the limited purpose
of having Ms. Sullivan decide whether she wants to, you know,
file a motion to suppress the search warrant, but asking him
not to get a copy of the search warrant to keep in his
custody in the jail.

THE COURT: Okay. And is that a search warrant on
the cell phone?

MR. SAFEEULLAH: That is correct.

THE COURT: Anything else? House? Residence?
Car?

MR. SAFEEULLAH: I think they may have done a
search warrant on -- on his car, as well.

THE COURT: Okay.

MR. SAFEEULLAH: And I think those may have been

1 state search warrants, which we can turn over. They don't

2 contain as much detailed sealed information as the federal

3 search warrant for the cell phone.

4          THE COURT: All right.

5          Okay. So y'all -- it sounds like you're in

6 process, Ms. Sullivan, of getting the discovery. With him

7 being at Harding Place, you know, that makes him more

8 accessible than usual, as you well know, for you to be able

9 to talk to him and keep him up to speed. I'll make a note of

10 the government's motion to unseal. And I've made a note of

11 the defendant's motion for interpreter services. Right?

12          MS. SULLIVAN: Yes, Your Honor, for the funding.

13 Uh-huh.

14          THE COURT: All right. So go ahead --

15          MS. SULLIVAN: Actually, it's interpreter, and

16 then there will be a separate for the transcription cost. So

17 I'll need one to attend the jail visits with me. And

18 although I'm willing to assume that risk, sometimes

19 interpreters aren't. So that may slow down the process, as

20 well.

21          THE COURT: Okay. That's fine.

22          MS. SULLIVAN: But it will be interpreter cost and

23 transcription cost.

24          THE COURT: Well, I'm going to grant all those

25 motions so you all can -- so you can get what you need and

1   keep the case moving.  And I gather from the indictment
2   Mr. Caceras is -- was not born in the United States?  Where
3   is he from?
4          MR. SAFEEULLAH:  He's from Honduras, Your Honor.
5          THE COURT:  Okay.
6          MR. SAFEEULLAH:  And I'm not sure if Your Honor
7   recalls, but you sentenced his mother Anabely Caceras.  She
8   was a codefendant in the case with the kidnapping that was
9   caught on tape at the residence that we had the trial on.
10         THE COURT:  Oh.  You're right.  I know.  I
11  remember.
12         MR. SAFEEULLAH:  Yeah.  So his mother was the
13  codefendant in that case.  And his brother is set to be
14  sentenced on May the 4th before Judge Campbell.
15         THE COURT:  Okay.  Thanks.  The Nashville -- I
16  appreciate -- it's hard to keep all these straight.  That --
17         MR. SAFEEULLAH:  Yes, sir.  He is a citizen of
18  Honduras.  There is an immigration detainer on him.  So if he
19  were to be released, he would go into ICE custody and be
20  deported back to Honduras.
21         THE COURT:  Okay.  So you probably --
22  Ms. Sullivan, you probably need some more time to review the
23  discovery, talk to Mr. Caceras.  But I'm sure the government
24  would be willing to talk whenever Mr. Caceras wants to talk.
25         Is that an accurate statement?

 1              MS. SULLIVAN:  Yes, sir.  Making the discovery

 2      available through their secured system has been wonderful.

 3              THE COURT:  Good.

 4              MS. SULLIVAN:  It's been very easy to access, Your

 5      Honor.

 6              THE COURT:  All right.  What else from the

 7      government does the government want to talk about?

 8              MR. SAFEEULLAH:  I think that's -- that's about

 9      it.

10              Yeah, Your Honor, I think from the government's

11      perspective that's all we have.

12              THE COURT:  Okay.  Ms. Sullivan?

13              MS. SULLIVAN:  Nothing further, Your Honor.

14              THE COURT:  Well, thanks for being available to do

15      this.  And we're all getting used to a new way of doing

16      things.  I'm not sure what the new norm is going to be, but

17      it's going to be different.  And we'll just make our way

18      through this.  So I'm glad you all are both at home and safe.

19      Have a good weekend.

20              (Court adjourned.)

21

22

23

24

25

1  REPORTER'S CERTIFICATE

2

3          I, Lise S. Matthews, Official Court Reporter for

4  the United States District Court for the Middle District of

5  Tennessee, with offices at Nashville, do hereby certify:

6          That I reported on the Stenograph machine the

7  proceedings held in open court on April 10, 2020, in the

8  matter of UNITED STATES OF AMERICA v. FRANKLIN

9  PINEDA-CACERAS, Case No. 3:19-cr-00256; that said proceedings

10 in connection with the hearing were reduced to typewritten

11 form by me; and that the foregoing transcript (pages 1

12 through 13) is a true and accurate record of said

13 proceedings.

14          This the 19th day of May, 2020.

15

16                              /s/ Lise S. Matthews
                                LISE S. MATTHEWS, RMR, CRR, CRC
17                              Official Court Reporter

18

19

20

21

22

23

24

25